UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05CV13-3-MU

| | |
|---|---|
| RONNIE SYLVIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| TOMMY MADDOX, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, (Document No. 25), Plaintiff's Complaint pursuant to 42 U.S.C. §1983, (Document No. 1), and Plaintiff's Amended Complaint (Document No. 42.) For the following reasons, Defendants' Motion for Summary Judgement will be granted.

### I. PROCEDURAL HISTORY

Plaintiff Ronnie Sylvia commenced this 42 U.S.C. § 1983 action by filing a Complaint on February 2, 2005 (Document No. 1) against Defendants Tommy Maddox, Keith Whitener, Toni Banks, David Weaver, and Nancy Austin, all employees of Alexander Correctional Institution. In his Complaint, Plaintiff alleges that Defendants Maddox and Banks used excessive force against him while he was restrained in handcuffs. Plaintiff alleges that Maddox pushed him into a metal slider, breaking his nose, and that Banks sprayed him in the face with mace at the direction of Maddox. Plaintiff further alleges that Defendant Austin was deliberately indifferent to his medical needs by failing to diagnose his broken nose and provide appropriate medical care and that she failed to

1

properly document the alleged assault on his medical jacket in an attempt to cover-up the alleged assault. Plaintiff also alleges that Defendant Weaver conspired and colluded with Defendants Maddox and Banks to cover-up the alleged excessive use of force by altering the official report of the use of force incident. Plaintiff asserts that Defendant Whitener was also a part of the conspiracy by failing to discipline the officers involved in the incident; however, by Order (Document No. 3) dated February 22, 2005, the Court dismissed Whitener, finding that Plaintiff's allegations were conclusory and not sufficient to state a claim. Finally, Plaintiff contends that Defendant Maddox acted with racial animus by stating "I'm going to gas your white ass right now." By way of relief, Plaintiff is seeking hundreds of thousands of dollars in damages from each of the defendants.

Defendants Maddox, Banks, and Weaver filed an Answer, (Document No. 14), on May 25, 2005. Defendant Austin filed her Answer, (Document No. 21), on October 4, 2005. Defendants then filed the subject Motion for Summary Judgment, (Document No. 25), and Memorandum in Support, (Document No. 26), on January 12, 2006. Plaintiff filed a Brief in Opposition to Defendant Summary Judgment Motion, (Document No. 34), on January 18, 2006. Plaintiff then sought permission to Amend his Brief, (Document No. 42), which was granted, (Document No. 43.) Plaintiff's Amended Brief, (Document No. 44), was filed on March 20, 2006. This matter is now ripe for adjudication.

## II. FACTS

On August 15, 2004 Plaintiff was complaining to the food service manager about his meal, "screaming 'where is my juice; I get fucking juice with my diet.' " Officer Edward Gunn ordered Plaintiff to move away from the window three times; however, Plaintiff contends that he did not hear his commands. Gunn informed Defendant Maddox that Plaintiff would not comply with his orders.

2

At that point, Maddox approached him, placed him in handcuffs and removed him from the dining room. Plaintiff states that as Maddox was escorting him to the segregation unit, Plaintiff attempted to explain the nature of his complaints to Maddox. Plaintiff and Maddox then exchanged unpleasant words. Although Defendant Maddox states that no profanity was used, Plaintiff contends that Defendant Maddox stated that Plaintiff "had no right to talk to the food service manager and if [Plaintiff] did not like what he said then [plaintiff] could put it on paper." Plaintiff stated he would do just that and Defendant Maddox responded "[i]f you don't shut the fuck up I'm going to gas your white ass right now." Plaintiff replied "[t]hat's exactly what a coward like you would do." (See Complaint at 4.) In response, Defendant Maddox allegedly became very upset and tightened Plaintiff's left handcuff to the point of causing pain.

Plaintiff's and Defendants' view of the use of force incident substantially diverge when Plaintiff and Maddox arrived in the segregation area. Plaintiff alleges that Maddox accused him of resisting orders, then slammed Plaintiff's head into a metal frame door. Defendant Maddox's incident reports states that Plaintiff had attempted to break away from the control of Maddox and that, in order to regain control of Plaintiff, Maddox maneuvered him into a corner next to the segregation cell.[1] Maddox then directed Defendant Banks, to spray Plaintiff with pepper spray since Plaintiff was still struggling to break away.

After Banks sprayed Plaintiff, Plaintiff alleges that Maddox slammed Plaintiff's face into a window, breaking his nose, then threw him to the ground and put his knee on Plaintiff's back, while

---

[1] Defendant Banks' affidavit supports Defendant Maddox's claim that Plaintiff tried to pull away from Defendant Maddox. Defendant Banks stated that she saw Plaintiff "attempting to jerk away and twist toward the lieutenant" when they arrived at the segregation slider. (Banks' Affidavit.)

3

yelling at Plaintiff to "stop resisting." However, Defendant Maddox states that he pushed Plaintiff into the segregation cell since he was still resisting and that Plaintiff's forward momentum carried him into the opposite door, which may have cause Plaintiff's nose injury. Maddox then placed Plaintiff on the ground and maintained his hold on him until other officers arrived on the scene. Maddox states that he used standard procedure for immobilizing an aggressive inmate. Defendant Maddox stated that he did not observe any noticeable injury to Plaintiff after the other officers took control and took Plaintiff to the shower for decontamination.

Following the alleged assault, Plaintiff was taken to a shower in order to wash the blood and pepper spray from his face. Plaintiff asserts that he was left in the shower in the nude for two hours. Defendants do not deny this allegation, but rather the response to Plaintiff's medical care grievance simply states that policy does not give a time limit one can stay in decontamination after being sprayed with pepper spray. Policy only requires access to water to clean the pepper spray from the face.

Plaintiff claims that he was not taken to a medical care provider following this incident. However, Plaintiff concedes that Defendant Nurse Austin came to examine Plaintiff in his segregation cell approximately six to seven hours after the incident. (Complaint at 5.) While in his cell, Nurse Austin wrote some notes about Plaintiff in a notebook. Nurse Austin noted a small abrasion on the bridge of his nose, red marks on his neck and both wrists and a small abrasion on his right knee. (See Nurse Austin Witness Statement, attached to Affidavit.) On August 18, 2004 Plaintiff submitted a sick call request complaining about bloody mucous and soreness to his nose. Nurse Austin examined Plaintiff on August 20, 2004 and referred Plaintiff to the family nurse practitioner. On August 26, 2004, Family Nurse Practitioner Karen Lewis examined Plaintiff in

4

response to the referral from Defendant Austin. Ms. Lewis ordered x-rays of Plaintiff's nose which revealed a minimally displaced traverse fracture that was of indeterminate age. Ms. Lewis noted that there was "nothing that should or could have been done to treat [plaintiff's] injury" and that it would heal on its own over time. (See Karen Lewis Affidavit.) Further Ms. Lewis stated that based on Plaintiff's injuries at the time, there was no reason for Nurse Austin to have ordered x-rays on the date of the incident, but that Plaintiff's complaint of discomfort and bloody nose several days later warranted her referral to Ms. Lewis. (Id.)

On the basis of the foregoing, Plaintiff claims that Maddox and Banks violated his Eighth and Fourteenth Amendment rights by virtue of their assaultive behavior; and that defendant Maddox acted with racial animus, in further violation of his civil rights. As to Austin, Plaintiff alleges that she was deliberately indifferent to his serious medical needs by having failed to examine him and determine the full extent of his injuries and that she further violated his rights by having failed to document her interaction with Plaintiff. Plaintiff also claims that Defendants Austin, Maddox and Banks violated his rights by conspiring with one another to obstruct justice and to cover up the assault. Plaintiff further claims that Weaver was made aware of the subject assault and failed to take corrective actions; therefore, he should be held accountable as either a direct or indirect participant.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party may not rest on his pleadings, but must demonstrate that specific material facts give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a :mere scintilla of evidence" is insufficient to overcome summary judgment." Id. at 249-50. The response must be specific and based on more than mere allegations of error or the falsity of defendants' affidavits. Bloodgood v. Garraghty, 783 F.3d 470 (4th Cir. 1986). Moreover, a few isolated facts are not sufficient to establish a genuine issue of material fact to overcome the grant of summary judgment. Sibley v. Lutheran Hosp. Of Maryland, Inc., 871 F.2d 479 (4th Cir. 1989). To put it another way, although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Ins., 877 F.Supp. 1002, 1005 (E.D. Va. 1995).

## IV. ANALYSIS

### A. EXCESSIVE USE OF FORCE

Plaintiff alleges that Maddox and Banks used excessive force against him in violation of his Eighth and Fourteenth Amendment rights. To succeed on a claim of excessive force under the Eighth Amendment, the plaintiff must establish (1) that the defendant acted maliciously or sadistically for the very purpose of causing harm to the plaintiff, and (2) that, absent extraordinary circumstances, the plaintiff's injuries are more than de minimis. See Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). Extraordinary circumstances are those in which the use of force is "repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than de minimis injury." Id. at 483-84 (quoting Norman v. Taylor, 25 F.3d 1259,

6

1263 n.4 (4th Cir. 1994)). The Court in considering an excessive force claim may consider factors such as the need for the application of force, the amount of force used and the extent of the injury sustained, if any. Gray v. Spillman, 925 F.2d 90, 93 (4th Cir. 1991). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Hudson v. McMillan, 503 U.S. 1, 9-10 (1992). De minimis injury is evidence of de minimis force and de minimis injury defeats a prisoner's excessive force claim unless the force used was "repugnant to the conscience of mankind." Nornam v. Taylor, 25 F.3d 1259, 1262-1263 (4th Cir. 1994) (en banc), cert. denied, 513 U.S. 1114 (1995).

With respect to Defendant Banks, Plaintiff has set forth no factual basis for finding that Banks acted maliciously or sadistically. Plaintiff states that when Banks appeared on the other side of the slider, Maddox said, "You've got a sergeant standing there watching you resist." Maddox then ordered Banks to spray Plaintiff. Plaintiff does not allege that Banks knew that Plaintiff was not resisting nor does he allege that Banks used the pepper spray in such a way that would shock the conscience of the Court. There is nothing in the record to suggest that Banks' use of force was malicious or sadistic, nor does his use of force shock the conscience of the Court. Furthermore, Plaintiff does not allege, nor do the medical records suggest, that he sustained any injury as a result of the pepper spray. Therefore, Plaintiff has not established an excessive force claim against Defendant Banks.

With respect to Defendant Maddox, while Plaintiff's and Maddox' stories are somewhat contradictory in that they disagree over whether Plaintiff was resisting and whether the amount of force used was necessary to bring Plaintiff under control and the Court recognizes that this could be a close case, the undisputed facts establish that Plaintiff had to be forcibly removed from the

7

breakfast line for making a disturbance and for using loud and profane language. It is clear from the evidence that Plaintiff was properly removed from the food service area and later plead guilty to causing a disturbance. These facts establish that Maddox properly used force against Plaintiff in transporting away from the cafeteria to segregation.

Assuming for the moment that Defendant Maddox did use excessive force when escorting Plaintiff to the segregation area, the injuries to Plaintiff simply do not rise to the level of an Eighth Amendment claim. Although a broken nose can cause severe pain and disfigurement, the Court takes judicial notice that a serious broken nose would require surgical intervention. In the present case, Plaintiff suffered only a minimal fracture with no displacement. No surgery was needed and no permanent disfigurement was alleged. Furthermore, Nurse Austin's examination six to seven hours after the alleged use of force revealed a small abrasion on the bridge of Plaintiff's nose, red marks on his neck and wrists and on his right knee. No visible signs of swelling or noticeable displacement of Plaintiff's nose was evident. While the Court assumes that Plaintiff's injury caused discomfort, it is insufficient to state an Eighth Amendment claim. Therefore, Plaintiff has failed to establish an excessive force claim against Defendant Maddox.

Finally, Plaintiff claims that Maddox made racially discriminatory remarks. The Court looks upon discriminatory remarks with great disdain; however, verbal abuse, without more, does not state a claim under § 1983. See Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C. 1990), aff'd 917 F.2d 1302 (4th Cir. 1990).

Summary judgment is granted in favor of Defendants Banks and Maddox as to the claims of excessive force and the use of racially discriminatory language.

**B. DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

To succeed on an Eighth Amendment claim of inadequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment violation occurs only if medical needs are serious. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need or serious risk of harm. Rish v. Johnson, 131 F.3d 1092 (4th Cir. 1997). Deliberate indifference is more than negligence, but less than intentional conduct. Wilson v. Seiter, 501 U.S. 294, 302. To be liable, a prison official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In contrast, a prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave wise was insubstantial or nonexistent." Id. at 844.

Plaintiff alleges that Defendant Austin failed to properly diagnose a broken nose, which was not discovered until several days after the incident, and that she failed to offer treatment to Plaintiff despite complaints of severe pain. Plaintiff has failed to set forth evidence which shows that there was an actual risk of serious harm. Although, in hindsight, it may have been better if Nurse Austin ordered Plaintiff's nose x-rayed on the date of the alleged incident, at the time Nurse Austin examined Plaintiff, which was six to seven hours after the incident, Nurse Austin noticed only a small abrasion on his nose, which would not warrant an x-ray. However, three days later, when Plaintiff complained of bloody mucous and soreness, Nurse Austin referred him to a family nurse practitioner for follow up. It was during this follow up that an x-ray was ordered which revealed a minimal fracture that would heal on its own over time. Plaintiff received no further medical

9

treatment for his nose even after the minimal fracture was discovered. At most, it can be said that Nurse Austin's failure to order an x-ray when she first examined Plaintiff following the use of force, may be considered negligence. However, negligence in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). Nor is a claim stated by disagreements regarding treatment between an inmate and physician. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975.

Plaintiff further alleges that Defendants violated prison policy by failing to properly record the diagnosis made by Austin on Plaintiff's medical jacket. According to Nurse Austin's affidavit, she took notes regarding her examination of Plaintiff in her notepad because she did not have Plaintiff's medical jacket with her when she went to segregation to examine him on August 15, 2004. Nurse Austin concedes that she failed to transcribe her notes from her notepad to her medical jacket, however, she did use her notes to write her witness statement and she did document Plaintiff's injuries in her witness statement. Nurse Austin's failure to transcribe her notes from her notepad to Plaintiff's medial file simply do not state an Eighth Amendment claim. Failure to properly record a diagnosis is not a cognizable Eighth Amendment claim. See Douglas v. McCarty, 87 F. App'x 299 (4th Cir. 2003).

The record reveals that Nurse Austin examined Plaintiff six to seven hours after the alleged use of force incident. Nurse Austin noticed a slight abrasion on Plaintiff's nose and knee and red marks on his neck and wrists. Several days later, when Plaintiff complained of continued soreness and bloody mucous, Nurse Austin referred Plaintiff to a family nurse practitioner who ordered x-rays and determined that Plaintiff has a minimal fracture which would heal on its own over time with no further treatment. On this record, Plaintiff has failed to establish an Eighth Amendment against

10

Nurse Austin.

**C. CONSPIRACY TO OBSTRUCT JUSTICE AND COVER UP THE ALLEGED ASSAULT**

Plaintiff's third claim is that Maddox and Banks acted with Weaver and Austin in a collusion and conspiracy to obstruct justice and cover up the assault. Plaintiff alleges that all Defendants violated Department of Correction policy by withholding information from their official reports or failing to verbally report the incident to their superiors. Plaintiff has failed to address this issue in his supporting declaration. Since a plaintiff cannot rest on his pleadings or on unsubstantiated allegations, summary judgment must be granted in favor of Defendants.

**D. RESPONDEAT SUPERIOR LIABILITY OF CAPTAIN WEAVER**

To establish a viable claim for respondeat superior liability under § 1983, a plaintiff must show that the supervisor had (1) actual or constructive knowledge of a risk of constitutional injury; (2) deliberate indifference to that risk; and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury he suffered. Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999) (quoting Shaw v. Shroud, 13 F.3d 791 (4th Cir. 1994)).

Plaintiff alleges that Defendant Weaver was fully aware of the incident and the deficiencies in the official reports, yet accepted the official reports as true. This may be sufficient to avoid summary judgment as to the first element of his claim; however, Plaintiff has failed to address whether Weaver was deliberately indifferent to the risk of a constitutional injury and has failed to establish facts which support an "affirmative causal link" between Weaver's alleged inaction and the alleged constitutional injury in the use of force incident. Plaintiff has brought forth nothing more than conclusory allegations which do not offer escape from summary judgment. Finally, and most importantly, since Plaintiff has not established any Constitutional violations by any of the other

defendants, his claim that Defendant Weaver conspired with them to cover up their wrongdoing must obviously fail.

**NOW THEREFORE, IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Document No. 25) is Granted; and

(2) Plaintiff's Complaint (Document No. 1) is dismissed.

**SO ORDERED**.

Signed: August 7, 2007

Graham C. Mullen
United States District Judge